## THE FREEHOLDERS OF MERCER v. THE FREEHOLDERS OF WARREN.

1. The county in which an indigent insane person, *not* a pauper, has his legal *settlement* is not therefore liable for the support of such insane person when sent to the asylum, nor to reimburse the county from which such lunatic was sent for their expenses in his support.

2. The county in which a lunatic, not a pauper, actually resides when he is sent

to the asylum, is primarily liable for his support without reference to his *settlement* under the poor laws, and cannot look to any other *county* for reimbursement.

3. In construing a statute, courts will not insert or supply a positive enactment or provision, because without it some other provision or language in the statute will be unmeaning and senseless.

The question in this case came up on demurrer to the first count of the declaration, which was as follows:

Mercer county, to wit: The board of chosen freeholders of the county of Mercer, by their attorney, complain of the board of chosen freeholders of the county of Warren, being summoned, &c., of a plea of trespass on the case, &c., for that whereas, heretofore, to wit, on the 19th day of June, 1848, to wit, at Trenton, in the county of Mercer, one *Eliza Brooks*, *being a person in indigent circumstances, but not a pauper*, and *becoming insane*, application was made in her behalf to C. B., who was then one of the judges of the Inferior Court of Common Pleas of the said county of M., the same being the county where the said Eliza Brooks then resided; and the said judge did thereupon call a respectable physician and other credible witnesses, and fully investigate the facts of the case, and, without the verdict of a jury, *decided that the said E. B. was both insane and indigent*, and did make a certificate that satisfactory proof had been adduced showing her, the said E. B., to be insane, and her estate insufficient to support her under the visitation of insanity; on which certificate, authenticated by the clerk of the said county of M., under the seal of the said Inferior Court of Common Pleas, she, the said E. B., was afterwards, to wit, on, &c., admitted into the State Lunatic Asylum of this state, at the expense of the said county of M.; and the said judge afterwards, to wit, on, &c., filed a certificate of the said physician, taken under oath, and other papers relating thereto, with a report of his said proceedings and decision, with the clerk of the said county of M., and reported the fact to the said plaintiffs.

And the said plaintiffs say, that the said E. B. has for a long time past, to wit, from the time aforesaid of her being admitted into the State Lunatic Asylum to the commencement of this suit, been kept and maintained there at the expense of

the said county of M., and that the said plaintiffs have during the said period, from time to time, been obliged to raise and pay to the treasurer of the State Lunatic Asylum, for the maintenance and support therein of the said E. B., divers sums of money, to wit, amounting in the aggregate to a large sum of money, to wit, to the sum of one thousand dollars. And the said plaintiffs further say, that at the time aforesaid, when the said application was made to the said judge, and the said E. B. was admitted as aforesaid into the said State Lunatic Asylum, the township of Mansfield, in the county of Warren, in this state, was the place of the legal residence of the said E. B., whereby and by means of the premises and by force of the statute, &c., the said defendants became liable to reimburse to the plaintiffs the said sum of money so by them laid out as aforesaid for the support and maintenance of the said E. B. while at, during the time aforesaid, the State Lunatic Asylum ; and being so liable, they, the said defendants, in consideration thereof, afterwards, to wit, on the 2d day of June, 1851, to wit, at, &c., undertook, and then and there faithfully promised the said plaintiffs to pay them the said sums of money, when thereto afterwards requested.

Argued before the CHIEF JUSTICE, and POTTS and ELMER, Justices.

*Vroom*, in support of the demurrer ; *Beasley*, contra.

GREEN, C. J. A person in *indigent circumstances*, but *not a pauper*, having become insane, was sent from the county of Mercer, where she then resided, to the lunatic asylum, under the provisions of the twenty-first section of the act to provide for the organization of the State Lunatic Asylum, passed February 4th, 1847, (*Pamph L.* 25.) The legal *residence* of the lunatic, at the time she was sent to the Asylum, was in the township of Mansfield, in the county of Warren. The lunatic having been kept and maintained at the asylum at the expense of the county of Mercer, this action is brought to recover from the county of Warren the moneys expended in such support and maintenance. The only question raised upon the demurrer

is, whether the latter county is liable for the moneys thus expended. The simple inquiry involved is, whether a county within which an insane person in *indigent circumstances*, but not a *pauper*, has his *legal settlement*, is liable for the support and maintenance of such insane person at the asylum, such insane person having been sent to the asylum from another county where she actually resided.

It is admitted that if the liability exist, it must be by force of some statutory provision. The liability is supposed to arise under the 21st and 32d sections of the act of February 4th, 1847. The 21st section enacts, that an *indigent insane* person, not a *pauper*, shall be supported in the asylum at the expense of the county from which he is sent. The 32d section enacts, that the expense of clothing and maintenance in the asylum of a patient, received upon the order of any court or judge, shall be paid by the county from which he is sent to the asylum, and that " said county shall have the right to require every individual, township, city, or county, that is legally liable for the support of such patient, to reimburse the amount of said bills, with interest from the day of paying the same." This section applies, in terms, as well to *paupers* as to those in *indigent circumstances* who are not paupers. And it authorizes the county from which the patient is sent, and which is primarily liable for her support and maintenance, to look for reimbursement to the individual or corporation *legally liable* for the support of such patient. It creates no new rule of liability. It does not declare what individual, township, city, or county shall be liable ; it leaves that to the operation of existing laws. If any individual or corporation was personally liable for the support of a patient, it declares that they shall be liable to reimburse the county from which the patient was sent, for the cost of his maintenance. If no individual, township, or county was legally liable for the support of the patient, the section gives no remedy. The burthen must remain upon the county by which it was originally paid.

Patients who are paupers can only be sent to the asylum from the county within which the pauper has a legal settlement (§ 20.) And as to the support of such patients, the

32d section clearly gives the county a remedy against the township. This remedy, however, is taken away by the 2d section of the act of March 1, 1850, (*Pamph. L.* 157,) and the burthen of maintaining all pauper patients is thereby thrown on the county within which they have their settlements. But this act in no wise affects the liability of counties for the support of patients who are not paupers.

It is insisted that the 32d section of the act gives to the county from which the pauper is sent to the asylum a right to be reimbursed, not only from the township or city, but from the *county* legally liable for his maintenance; that this phraseology was not accidental, but was inserted by design, as it occurs not only in the 32d, but also in the 27th, 28th, and 29th sections of the act, and that the fair inference from this phraseology is that the legislature intended to make the county within which a patient not a pauper had his legal settlement liable for his support, inasmuch as, otherwise, no county is liable for the support of any patient, and the provision is unmeaning and inoperative. It is not improbable that the draftsman of the statute had in view the case of counties, like Salem, which support their poor from the county treasury.

But admitting the suggestion in its full force, in the absence of express enactment, no new liability can be created by the use of loose, inaccurate, or inappropriate phraseology in the law. Whether the omission was the result of inadvertence or design, it is clear that the statute contains no provision rendering a county within which a patient *not a pauper* has his legal settlement, and who has been sent to the asylum from another county, liable for his support.

The burthen rests upon the county from which such patient is sent. There must be judgment for the defendants.

POTTS, J. Eliza Brooks, a resident of the county of Mercer, being a person in indigent circumstances, but *not a pauper*, having become insane, was sent by the proper authority in Mercer county to the State Lunatic Asylum, in June, 1848; and the plaintiffs, alleging that the *legal* residence of said Eliza is in the township of Mansfield, in the county of War-

ren, bring this suit to be reimbursed for the expense of her support in the asylum, which has been paid by them.

The defendants demur to the count in the declaration setting out this cause of action.

The act for the settlement and relief of the poor (*Rev. Stat.* 877) prescribes what shall constitute a legal residence for the purposes of that act, and how it may be obtained; and also fixes the liability of the township to maintain or relieve a *pauper* having such legal residence within its bounds. It also defines who shall be considered paupers, and entitled to such maintenance or relief.

To make a township liable under this act, two things must be found, to wit, legal residence and legal pauperism, as defined in the act.

The act to provide for the organization of the State Lunatic Asylum, and for the care and maintenance of the same, (*Pamph. L.* 1847, *p.* 18, § 20,) provides for the sending of insane *paupers* to the asylum, and for their maintenance at the expense of the county in which is their "residence." And as "pauper" is the description of a person within the meaning and provisions of the poor law, the phrase " his residence " will be taken to mean his *legal residence*, as fixed by that law.

But the 21st section of the act provides for sending another class of persons to the asylum, to wit, " persons in indigent circumstances not paupers ; " and such a person is directed to be sent by the authority of the proper officer of the *county where he resides*, and to be maintained " at the expense of *said county.*"

Under the laws of this state, the legal residence of persons not paupers is in the place where they actually reside and make their home, not as mere visitors but as permanent residents, and this without reference to the time or incidents which fix a residence under the law for the relief of the poor. And in this respect it matters not whether they are affluent or indigent.

But the difficulty which meets the plaintiffs is this : the authorities of the county of *Mercer* have no power to send an indigent person not a pauper, *who resides in Warren county,*

to the asylum. If, therefore, Eliza Brooks was a resident of Mansfield, Warren county, she was sent without any authority, if of Mercer, she was legally sent : in either case the defendants are not liable for the expense of her maintenance.

The demurrer must be sustained.

ELMER, J. The declaration, to which there is a general demurrer, sets forth, in substance, that application was made in behalf of a certain insane female in indigent circumstances, but not a pauper, to one of the judges of the Court of Common Pleas of the county of Mercer, the same being the county where she resided ; that proceedings were duly had, by means whereof she was sent to the State Lunatic Asylum, pursuant to the statutes, and being maintained there at the expense of said county, plaintiffs paid a large sum of money for her maintenance and support therein ; and that when the application aforesaid was made, and the said insane person was admitted into the said State Lunatic Asylum, the township of Mansfield, in the county of Warren, was the place of the legal residence of the said insane person, whereby defendants became liable to reimburse to plaintiffs the sum of money by them expended and paid for her said maintenance. The question presented is, whether the facts stated show any liability on the part of the board of chosen freeholders of the county of Warren to repay to the plaintiffs the money thus expended and paid.

The liability of the defendants to reimburse this expense, is attempted to be inferred from the language of the 21st and 32d sections of the act of February 23, 1847, page 18, entitled, " An act for the organization of the State Lunatic Asylum and for the care and maintenance of the insane," in connection with the other provisions of the same act and of several supplements. The 21st section provides, that when a person in indigent circumstances, not a pauper, becomes insane, application may be made on his behalf to two judges (since altered to one) of the court of Common Pleas of the county where he resides, and directs what proceedings shall be had to entitle the insane person to be admitted into the asylum at the ex-

pense of said county. A preceding section provides for the case of insane paupers, and directs the overseer of the poor of the township where he resides to apply in a similar manner. Section 32d provides, that the expenses of clothing and maintenance in the asylum of a patient who has been received upon the order of a court or judge, shall be paid by the county from which he was sent, "said county, however, shall have the right to require every individual, township, city, or county, that is legally liable for the support of such patient, to reimburse the amount of said bills, with interest." A supplement, passed in 1849, (page 240) after reciting that doubts had arisen as to the true construction of that part of the aforesaid 32d section which provides that the counties shall have the right to require every township that is legally liable for the support of such patients as are mentioned in said section to reimburse the amount of bills incurred by them, enacts that the town legally liable shall be understood and construed to mean the township from which such lunatic was sent to the asylum. A further supplement, passed in 1850, (page 157) repeals so much of the original act, and the several supplements thereto, as authorize the counties or the treasurer of the asylum to recover from townships or cities the expenses of maintaining patients sent to the asylum by virtue of the order of any judge or court.

As the supplement of 1850, which takes away the liability of townships and cities to reimburse the county sending a patient to the asylum, does not repeal that part of the 32d section of the original act which authorizes such counties to recover the expense incurred from " every county that is legally liable for his support," it is now argued, with some plausibility, that the county of Warren is thus " legally liable," that being, in the language of the declaration, " the place of her legal residence." But no statute has been pointed out to us which provides that the county in which an insane person, not a pauper, has a " legal residence," shall be " legally liable for his support." Certainly no county is thus liable at the common law, and it will not do to infer a liability from vague expressions in the statutes, not necessarily leading to such a re-

sult. In the case even of a pauper, no county is liable for his support, except the county of Salem, where by virtue of a special act, applicable to that county only, (*Rev. Stat.* 893) all paupers settled in any of the townships thereof are to be relieved by the county, even in cases where they cannot safely be removed to the poorhouse. In all the other counties, the legal liability to support a pauper remains in the townships, except in cases where the county has established a poorhouse, and after the pauper has been actually removed to it. And it is to be remarked, that the legal liability of the county of Salem, or of any other county where the pauper has been placed in the poorhouse, or of the several townships in the state, is not to support those whose " legal residence " is in such county or township, but only those whose " legal settlement " is therein. Legal residence and legal settlement are not synonymous terms. Indeed it is difficult to understand what is meant by the phrase " legal residence," as used in the declaration, and as contrasted with that residence, temporary or otherwise, which authorizes the indigent insane person to be sent to the asylum at the expense of the county of Mercer. The statutes speak of residence, but not in contrast with legal residence elsewhere, although they do seem to use it in contrast with a legal liability to support the insane person, as being in some other township, city, or county. Taking it, however, to mean, as applicable to an insane indigent person, the same as " legal settlement " in the case of a pauper, I find nothing in the acts referred to which will justify us in holding that any township, city, or county was ever made legally liable for the support of such indigent insane person, not a pauper, except the county sending him to the asylum, or that any county, except the county of Salem, or those counties having a poorhouse, and having the pauper actually in it, was ever legally liable for the support even of a pauper.

Section 21st of the original act casts the burthen of the indigent insane person's support upon the county, and directs the application to be made for his relief to the judges of the county " in which he resides," a phrase somewhat ambiguous, especially as used in the 20th section as applicable to a pauper.

But in the case before us the authorities of the county of Mercer having acted upon it, and treated it as designed to apply to a person residing, in some sense, in that county, having at the same time a " legal residence " elsewhere, they cannot now turn round and say this is not the county whose duty it was to take this step; but having voluntarily and humanely done. so, the county of Warren is now bound to reimburse us.   If the county of Warren was the county in which the insane person resided, within the true meaning of that section, then the authorities of the county of Mercer had no right to judge whether she was a proper person to be relieved ; they should have let the application be made to the authorities of the county which was bound to bear the expense.   No principle is better settled than, that a volunteer upon whom no legal liability is cast cannot incur expense, and then call upon the person who ought to have incurred it to reimburse him.   If the county of Mercer, as the law then stood, was the proper county to send the insane person to the asylum, then it follows that, there being no legal liability to support her upon the part of any other county, the law cast upon the county of Mercer the expense of doing so, without recourse elsewhere.   Since this action was commenced, a supplement, approved February 20, 1852, (page 74) has probably put an end to the difficulty for the future.   It provides, in effect, that no lunatic shall be sent to the asylum, unless the chosen freeholders of the township in which the lucatic is found are satisfied that he has a legal settlement in their county, as defined by the poor law.

I am of opinion that the demurrer is well taken, and that the judgment must be for defendants.